**In re Mary Jane RUNDLETT, Debtor.**

**Bankruptcy No. 91 B 21781.**

United States Bankruptcy Court,
S.D. New York.

June 1, 1992.

Shaw, Licitra, Parente, Esernio & Schwartz, P.C., Garden City, N.Y., for debtor.

Zalkin, Rodin & Goodman, New York City, for trustee.

Zeichner Ellman & Krause, New York City, for Crossland Federal Sav. Bank.

## DECISION ON MOTION FOR SUMMARY JUDGMENT ON CLAIMS OF EXEMPTION AND CROSS–MOTION FOR SUMMARY JUDGMENT ON OBJECTIONS TO CLAIMED EXEMPTIONS

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The Chapter 7 debtor, Mary Jane Rundlett, has moved for summary judgment under Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056 on her claims of exemption under New York Insurance Law § 3212(b)(2) as to proceeds of life insurance policies on her deceased husband's life received by her prior to the commencement of her bankruptcy case. The trustee in bankruptcy has cross-moved for summary judgment. There is no question that the death benefits under the insurance policies, totalling approximately $3.5 million, are exempt from the creditors of the husband, who was the insured and who purchased four of the five policies. The issue in dispute is whether the death benefits are also exempt from the beneficiary wife's creditors after she received the funds.

## FACTUAL BACKGROUND

The debtor is the widow of the late Donald H. Rundlett, who was the Chief Executive Officer of Private Capital Partners, Inc. ("PCPI"). PCPI filed with this court a Chapter 11 petition on October 10, 1991. The debtor, Mary Jane Rundlett, had cosigned as a guarantor with her husband certain obligations of her husband's corporation to various banks. Her husband, Donald H. Rundlett, died on August 25, 1991. On November 15, 1991, an involuntary Chapter 7 petition was filed against the debtor by a group of banking institutions holding guaranties which she issued to them. The debtor elected to convert the involuntary case to a voluntary Chapter 11 case. She filed her schedule of exempt property, claiming the death benefits which she received under insurance policies on the life of her deceased husband as exempt under New York Insurance Law § 3212. Thereafter, on motion made by the petitioning banking institutions, this court reconverted the debtor's Chapter 11 case to a case under Chapter 7, 136 B.R. 376, pursuant to an order entered on February 21, 1992.

This controversy relates to the proceeds from life insurance policies. Two of the policies were owned by the debtor with proceeds aggregating $603,097.60. Two policies were owned and paid for by the debtor's deceased husband, with proceeds amounting to $2,011,889.44 and one policy was owned by his corporation, PCPI, with proceeds aggregating $913,013.78, for total death benefits in the sum of $3,528,000.00.

## DISCUSSION

In ruling on a motion for summary judgment, the court must review the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, to determine if there is no genuine issue as to any material fact so that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d

265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Inc. v. Zenith Radio Corp.,* 475 U.S. 574, 599, 106 S.Ct. 1348, 1362, 89 L.Ed.2d 538 (1986). The nonmoving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

### The Exemption Statute

The governing New York statutory language for exempting the proceeds from life insurance policies reads as follows:

(b)(1) If a policy of insurance has been or shall be *effected* by any person on his own life in favor of a third person beneficiary, or made payable otherwise to a third person, such third person shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person *effecting* the insurance.

(2) If a policy of insurance has been or shall be *effected* upon the life of another person in favor of the person effecting the same or made payable otherwise to such person, the latter shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person insured. *If the person effecting such insurance shall be the spouse of the insured, he or she shall be entitled to the proceeds and avails of such policy as against his or her own creditors, trustees in bankruptcy and receivers in state and federal courts.*

N.Y.Ins.L. § 3212(b) (McKinney 1985) (emphasis added).

The key words in the statute are "effecting such insurance." If the debtor in this case effected the insurance policies on the life of her late husband, naming herself as beneficiary, the proceeds would be exempt from her creditors. This point is made

clear from the Recommendation of the Law Revision Commission of New York in explaining Section 166 of the New York Insurance Law, which was the predecessor statute to New York Insurance Law § 3212(b).

> Subdivision 1 of Section 166 of the Insurance Law provides that where a person buys a policy on the life of another made payable to the purchaser, the proceeds will be immune from attack by the insured's creditors. If the purchaser is the wife of the insured the proceeds will also be free of any claims made by her creditors.

Recommendation of The Law Revision Commission of New York, Ch. 140 (1976).

Generally, prior to 1969, the courts rejected this debtor's argument that if a wife caused her husband to procure insurance for her own benefit, the proceeds of insurance would be exempt from her creditors. *Levine v. Laurdan Management Corp.,* 179 Misc. 241, 38 N.Y.S.2d 442 (1942), *aff'd,* 180 Misc. 672, 41 N.Y.S.2d 123, *aff'd,* 266 A.D. 840, 43 N.Y.S.2d 751 (1943); *Levitt v. Fichtner,* 191 Misc. 610, 77 N.Y.S.2d 631 (1948). Thus, in order for the proceeds to be exempt from the wife's creditors she must have taken out insurance on her husband's life on her own initiative instead of his having purchased the insurance on his life, naming the wife as beneficiary.

> The statute obviously contemplates that in order for the proceeds to be exempt from claims of creditors of the wife a situation must exist where the wife on her own initiative takes out insurance upon her husband, making the application for the policy and receiving the policy. This is quite different from a situation where the husband, even at the instigation of his wife, takes out a policy of insurance, signs the application and receives the policy and thereafter the proceeds are paid to the wife as the beneficiary at his death.

*In re Bifulci,* 154 F.Supp. 629, 631 (S.D.N.Y.1957). The court in *Bifulci* then held that the death benefits received by the bankrupt wife were not exempt from her creditors. *Id.* at 631.

In 1969, the New York Supreme Court, Appellate Division First Department held that when a husband assigned to his wife three insurance policies which he took out on his life, with his wife as a beneficiary on two policies and his son as beneficiary on the third policy, the wife was deemed to have effected the policies so that the cash surrender value was exempt from the wife's creditors. *Kaufman v. New York Life Insurance Co.,* 32 A.D.2d 79, 299 N.Y.S.2d 269 (1969), *aff'd without opinion,* 26 N.Y.2d 878, 258 N.E.2d 213, 309 N.Y.S.2d 929 (1970). The rationale of the *Kaufman* case was that the wife was deemed to have effected the policies because the husband acted as her agent in purchasing the policies, which were then assigned to her by her husband.

*Kaufman* dealt with the interests of the title owner of the insurance policy, namely the cash surrender value, while the debtor and his wife were both alive. It did not deal with payments to the beneficiary wife after the debtor husband died. However, the court said by way of dictum that "prior to transfer the proceeds [cash surrender value] of the policies as to which Sylvia was the beneficiary would be exempt from creditors of both David and Sylvia." *Id.* 299 N.Y.S.2d at 271. The court used the term "proceeds" to refer to the cash surrender value to which the owner of the policy was entitled while alive and not the funds payable to the beneficiary on death of the owner. This point is made clear by the fact that the court said that "[b]ut for the assignment of such policies the *proceeds* thereof clearly would have been exempt from attachment as to the debtor Sylvia Tuckerman since she would *only* have had the interest of a beneficiary." *Id.* (emphasis added). Thus, prior to the death of the title owner, the beneficiary would not have an interest in the cash surrender value of the policy which belonged to the owner. It would only be after the death of the owner that the beneficiary would receive funds which might be attachable by the beneficiary's creditors. The *Kaufman* court saw no difference for purposes of the insurance exemption with respect to the cash surrender value proceeds between the situation where the wife effected the insurance policy by taking it out in her own

name and where the husband took out the policy and assigned it to the wife. The critical feature for purposes of the exemption was the fact that the wife had title to the policies and not that she was the beneficiary. Indeed, one of the three policies named their son as the beneficiary and not the wife. The important point was that after all three policies were assigned to the wife, namely the two policies where she was beneficiary and one policy where the son was beneficiary, the result was that the wife became the title owner of the policies. Accordingly, the affirmative act, for purposes of satisfying the insurance exemption claimed by the wife, was that she must have "effected" the policy by obtaining title. The court treated the husband's purchase of the policies as acting as an agent for his wife so that his affirmative act of acquiring title to the policies was attributed to the wife after he assigned the title to her. This point was made clear by the following language:

> The single difference and point of separation between the statutory provision quoted, where title is created by virtue of an affirmative act of the wife, and our case is that title here was vested in Sylvia by reason of the act of another, her husband.

Thus, the court focused on the fact that the wife acquired title to the three policies, including the policy in which the son, and not the wife, was the beneficiary. The wife's right to the cash surrender value proceeds as title owner by assignment was the key factor in determining that the cash surrender value proceeds were exempt from the wife's attaching creditors because she became title owner of the policies after they were assigned to her and her husband's affirmative act "effecting" or causing the insurance policies to be taken out was thereafter attributable to the wife. The husband was deemed her agent for purposes of acquiring title to the policies.

The agency theory employed by the Kaufman court was derived from Chatham Phoenix National v. Crosney, 251 N.Y. 189, 167 N.E. 217 (1929). There, the court dealt with creditors of the deceased husband rather than the surviving wife. The husband took out the policy and was deemed to have been the agent for the wife so that the beneficial proceeds were exempt from the deceased husband's creditors. This point is academic because New York Insurance Law § 3212(b), the current exemption statute, specifically provides that the creditors of a deceased debtor may not attach the beneficial proceeds received by the deceased debtor's wife. The Chatham case did not address whether the wife's creditors could attach the beneficial proceeds received under the deceased husband's insurance policy. No question of the wife's creditors was involved.

In Dellefield v. Block, 40 F.Supp. 616, 617 (S.D.N.Y.1941), Judge Rifkind noted that "it appears to have been the husband, rather than the wife, who 'effected' the insurance." As in the Kaufman case, both the husband and the bankrupt wife were alive. The court stated that it was clear that the proceeds or cash surrender value of the policies is exempt from the husband's creditors. Based on the same theory of agency between husband and wife as expressed in the Kaufman and Chatham cases, the court also concluded "that the proceeds and avails of these policies are exempt from the execution of Mrs. Block's creditor." Id. at 617. Thus, the court recognized that the insurance was "effected" by the husband and not the wife, but that the cash surrender value would also be protected from the wife's creditors while the husband was still alive. The court did not rule that the death benefits were also protected from the wife's creditors after the death of the husband.

The only reported New York case after the Kaufman case dealing with a wife's claimed exemption from her own creditors for proceeds of life insurance on the life of the husband is The Travelers Insurance Company v. Spadaccini, 95 Misc.2d 699, 408 N.Y.S.2d 299 (1978). There, the policy had previously been purchased by the debtor's deceased husband. The policy had not been assigned to the wife. The court held that no proof had been submitted that the wife had "effected the policy" on the life of her husband. However, the court held that the insurance proceeds were exempt under the trust provisions of N.Y.E.P.T.L. § 701

5(a)(2) which governed trust provisions created by trust agreements affecting proceeds left with the insurance company.

Accordingly, the *Kaufman* case continues to reflect the law in New York that when a husband assigns a life insurance policy on his life to his wife, he is deemed to have acted as her agent so that she should be regarded as having caused or effected the policy, with the result that the proceeds, including the cash surrender value, are exempt from the wife's creditors.

■ In the instant case, two of the policies were purchased by the debtor's late husband and assigned to her, with proceeds totalling $603,097.60. As to those policies, the debtor will be regarded as having "effected" the policies, with her husband having acted as her agent. The husband's assignment of the policies to the debtor constitutes the affirmative act signifying that he treated his wife as having procured the policies originally through his agency status. As to these policies there are no material facts in dispute and the debtor is entitled to summary judgment in her favor.

■ As to the two policies in the husband's name which were never assigned to the debtor, there is no affirmative act asserted to reflect that the husband acted as the debtor's agent for purposes of concluding that the debtor "effected" the policies in her husband's name. The proceeds from these two policies aggregating $2,011,-889.44, are not exempt from the beneficiary wife's creditors under New York Insurance Law § 3212(b). Where a husband takes out insurance on his own life and names his wife as beneficiary, but does not assign the policy to her, the proceeds are exempt from the husband's creditors, but they are not exempt from the wife's creditors, even if the policy was taken out at the instigation of his wife. *Bifulci*, 154 F.Supp. at 631. Therefore, summary judgment must be denied to the debtor and granted in favor of the cross-movants.

■ The fifth policy was taken out by the husband's corporation, PCPI. Where a corporation takes out an insurance policy on the life of a shareholder, the shareholder's wife cannot be regarded as having effected the insurance. *Levitt v. Fichtner*,

191 Misc. 610, 77 N.Y.S.2d 631 (1948). Therefore, the debtor is not entitled to exempt the $913.013.78 proceeds from the policy as against her own creditors. The cross-motion for summary judgment is granted as to the proceeds from the policy held by PCPI.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (E).

2. There is no factual dispute with respect to the two insurance policies owned by the debtor, with proceeds totalling $603,097.60. The debtor will be regarded as having "effected" these policies within the meaning of New York Insurance Law § 3212(b), with the result that the proceeds will be exempt from the debtor's creditors. Summary judgment shall be entered in her favor to this extent and the movants' cross-motion for summary judgment as to these proceeds is denied.

3. The two policies in the name of Donald H. Rundlett, with proceeds totalling $2,011,889.44, will not be regarded as having been "effected" by the debtor for purposes of New York Insurance Law § 3212(b). Therefore, the proceeds from these policies will not be exempt from the debtor's creditors. The debtor's motion for summary judgment shall be denied as to these proceeds and the movants' cross-motion for summary judgment will be granted as to these policies and proceeds.

4. The one policy owned by PCPI, with proceeds in the sum of $913,013.78, will not be regarded as having been "effected" by the debtor within the meaning of N.Y.Ins.L. § 3212(b). Hence, the proceeds from this policy will not be exempt from the debtor's creditors. The debtor's motion for summary judgment shall be denied as to the proceeds from this policy and the movants' cross-motion for summary judgment will be granted as to this policy and its proceeds.

SETTLE ORDER on notice in accordance with the foregoing.